**BERNING, et ux v. THOMAS, et ux.**

Circuit Court, Dade County.

March 15, 1954.

Joseph A. Wanick, Miami Beach, for plaintiffs.

E. Paul Beatty, Miami, for defendants.

VINCENT C. GIBLIN, Circuit Judge.

This suit, which involves an unfortunate dispute of neighbors as to the proper location of the boundary line between their properties, was tried before me and I have carefully considered the testimony and proofs submitted.

The tract which includes the properties of the parties was subdivided and platted by the owner, Spring Garden Realty Company. The plat of the subdivision, known as Spring Garden, was filed for record February 7, 1919. As the testimony of an expert surveyor (who testified before me) shows, the plat is accurate and the boundaries of the several lots in the subdivision are correctly reflected by the plat. The accuracy of the plat should have obviated dispute as to lot boundaries, because they were easily and readily determinable by a survey. Regrettably, however, it did not, and litigation between predecessors in title of the parties to this suit resulted.

Both the plaintiffs and the defendants claim under a common grantor, Spring Garden Realty Company, by which the tract embracing their lots was subdivided and platted.

By its warranty deed dated July 14, 1919 (which was filed for record July 15, 1919), Spring Garden Realty Company conveyed to Lilian M. Richardson (the plaintiffs' immediate predecessor in title) lot 1 of block 11 of the subdivision; and by its warranty deed dated January 3, 1921 (which was filed for record February 1, 1921), the subdivision owner conveyed to the same grantee lot 2 of block 11.

By its warranty deed dated June 24, 1919 (which was filed for record June 25, 1919), Spring Garden Realty Company conveyed to W. C. Maynard (a predecessor in title of the defendants) lot 3 of block 11.

Lilian M. Richardson was the record title holder of lots 1 and 2, and W. C. Maynard of lot 3, on August 23, 1929, when Mrs. Richardson and her husband commenced in this court a suit in equity (cause # 24493) against W. C. Maynard and Fred L. Harley (a lessee).

In their bill in such prior suit the complainants alleged that, because of the removal of the engineer's stakes indicating the true boundary line between lots 2 and 3, the defendant owner of lot 3 had "misconceived" the location of such line, was claiming that it was five and one-half feet north of the true location, had torn down a fence which the plaintiff owner of lot 2 had constructed

along the true boundary line, and was threatening to erect a fence along the "misconceived" line. The complainants prayed for injunctive relief against the threatened construction of the fence and for the establishment, by the court's final decree, of the true boundary line.

A demurrer (one of the grounds of which was that the law afforded an adequate remedy) was interposed to the bill and was sustained, with leave to amend.

Instead of amending their bill in the equity suit, Mrs. Richardson and her husband instituted in this court on August 2, 1929, an ejectment action (cause # 12158) against W. C. Maynard and Josephine Maynard, his wife, and Fred L. Harley and Ethel S. Harley, his wife.

In their declaration in the ejectment action the plaintiffs alleged that the defendants were in possession of "the southerly *eight* feet of lot 2"; and the plaintiffs sought by their action to recover the possession of such eight-foot strip. The defendants interposed a plea of "not guilty," by which they admitted their possession of such strip and put in issue the title to it.

The issues in the ejectment action were decided in favor of the defendants by a jury who returned a verdict of "not guilty." A final judgment for the defendants, based on such verdict, was entered March 18, 1930. It has never been reversed or vacated.

After the entry of the final judgment in the ejectment action, the equity suit was "dismissed at the cost of the complainants" on August 6, 1930, on a written stipulation that "an order of dismissal may be entered in . . . the cause dismissing same at the cost of the complainants; all rights of exception are reserved." The order of dismissal has never been vacated or modified.

The evidence adduced at the trial of the ejectment action is not before me. It is difficult, if not impossible, in view of the perfect record title of the plaintiff Lilian M. Richardson to the eight-foot strip of lot 2 involved in the action, to understand why the jury decided the issue of title against her. Nevertheless, they did; and since the final judgment predicated on the jury's verdict has not been reversed or vacated, it is conclusive on the question of title and is a bar to a subsequent action or suit between the same parties or their privies. The judgment, while it did not establish any title in the defendants, or any of them, did establish that the plaintiff Lilian M. Richardson was not the owner (at the time of the trial) of "the southerly eight feet of lot 2" and it operates as an estoppel against her immediate grantees (the plaintiffs in this suit) to prevent their relitigation of the question of title to such strip, to

avoid which they must show some title or right of possession other than that which was available to their predecessor in title in the former action. 18 Am. Jur., pp. 100-103.

By their warranty deed dated December 13, 1934 (which was filed for record December 28, 1934), Lilian M. Richardson and C. O. Richardson, her husband, conveyed to the plaintiffs (in this suit), Cyrill G. Berning and Harriet Berning, his wife, lots 1 and 2 of block 11, according to the mentioned plat. They have, however, no record title other than that which was held by their immediate predecessor in title at the time of the entry of the final judgment in the ejectment action. They are forced, therefore, in this suit (in which they seek to quiet their claimed title to all of lots 1 and 2 of block 11) to rely, in so far as "the southerly eight feet of lot 2" are concerned, on proof that since the entry of such judgment title to such eight-foot strip has been acquired by adverse possession.

The testimony and proofs impel me to the conclusion that the plaintiffs have not proved, by a preponderance of evidence, that they have a legal or equitable title to such strip. It has not been shown that title by adverse possession has been acquired.

There remains for determination the question of whether the defendants are entitled to any affirmative relief under their counterclaim.

By their warranty deed dated April 11, 1945 (which was filed for record April 17, 1945), W. C. Maynard and Josephine Maynard, his wife (the successful litigants in the ejectment action concluded in 1930), conveyed to Morris Runkel lot 3 of block 11. No part of the eight-foot strip which had been involved in the ejectment action was conveyed.

By his warranty deed dated April 16, 1945 (which was filed for record January 14, 1946), Morris Runkel conveyed to Thaddeus Breton and Corinne Breton, his wife, lot 3 of block 11.

The defendants, therefore, have a perfect chain of record title to lot 3.

The only recorded instrument under which the defendants can claim any interest in any part of the adjoining lot 2 is a quit-claim deed dated February 21, 1949 (which was filed for record the same day) by which Thaddeus Breton and Corinne Breton, his wife (simultaneously with their conveyance, by warranty deed, to the defendants of lot 3), remised, released and quit-claimed to the defendants "all the right, title, interest, claim and demand" which such grantors had in and to "the south *five and one half feet* of lot 2, block 11, of Spring Garden, according to the plat thereof recorded

in plat book 5, at page 38, of the public records of Dade County, Florida." It was to cancel such quit-claim deed as a cloud on their asserted title to all of lot 2 that the plaintiffs brought this suit.

It is obvious that at the time of the execution of the quit-claim deed the grantors had no record title whatever to any part of lot 2; and there was no adequate proof that at such time the grantors were in possession of the five and one-half foot strip described in the deed. It is clear, therefore, that the deed was and is void, as to the plaintiffs, and constitutes no evidentiary basis for the granting of any affirmative relief to the defendants. They are forced, therefore, in the prosecution of their counterclaim (in which they pray that they be decreed to be the owners of the "south five and one-half feet of lot 2, block 11"), to rely on proof that they have acquired title to such strip by adverse possession.

The testimony and proofs have produced no preponderance of evidence in support of the defendants' claim that they have acquired title to such five and one-half foot strip by adverse possession.

For the reasons stated, I can accord no affirmative relief to either the plaintiffs or the defendants. I am unable to establish a boundary line.

The plaintiffs' bill of complaint and the defendants' counterclaim are both dismissed.

The defendants are required to pay the attendance fee of the court reporter by whom the trial proceedings are stenographically recorded, because such proceedings were reported, not pursuant to my order, but at the request of counsel for the defendants.